Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Ohio

### Western Division

**FILED**

**SEP 02 2025**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

Michael Lee Brown

Case No. **3 : 25 CV 1824**
*(to be filled in by the Clerk's Office)*

)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

)
)
)
)
)

Jury Trial: *(check one)* ☑Yes ☐No

**JUDGE HELMICK**

**MAG JUDGE CLAY**

-v-

)
)
)

Hitachi Astemo Americas, Inc. --- Hitachi Astemo
Americas, Inc. - Findlay, Ohio Plant --- Astemo
Americas, Inc.

)
)
)
)
)

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

)
)
)
)

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Michael Lee Brown |
| Street Address | 103 South Adams Street |
| City and County | Fostoria - Hancock County |
| State and Zip Code | Ohio - 44830 |
| Telephone Number | 419-701-1538 |
| E-mail Address | mlbrown.62@yahoo.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | Hitachi Astemo Americas, Inc. |
| Job or Title *(if known)* | n/a |
| Street Address | 34500 Grand River Avenue |
| City and County | Farmington Hills - Oakland County |
| State and Zip Code | Michigan - 48335 |
| Telephone Number | (248) 474-2800 |
| E-mail Address *(if known)* | n/a |

Defendant No. 2

| | |
|---|---|
| Name | Hitachi Astemo Americas, Inc. - Findlay, Ohio Plant |
| Job or Title *(if known)* | n/a |
| Street Address | 1901 Industrial Drive |
| City and County | Findlay - Hancock County |
| State and Zip Code | Ohio - 45840 |
| Telephone Number | (419) 420-3844 |
| E-mail Address *(if known)* | n/a |

Defendant No. 3

| | |
|---|---|
| Name | Astemo Americas, Inc. |
| Job or Title *(if known)* | n/a |
| Street Address | 34500 Grand River Avenue |
| City and County | Farmington Hills - Oakland County |
| State and Zip Code | Michigan - 48335 |
| Telephone Number | (248) 474-2800 |
| E-mail Address *(if known)* | n/a |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Hitachi Astemo Americas, Inc. - Findlay Plant |
| Street Address | 1901 Industrial Drive |
| City and County | Findlay - Hancock County |
| State and Zip Code | Ohio - 45840 |
| Telephone Number | (419) 420-3844 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

Family and Medical Leave Act (FMLA)

☑ Relevant state law *(specify, if known)*:

Ohio Revised Code 4112.02

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.     The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☑ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*:    See attached - "Statement of Claim Section A Other Acts"

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.     It is my best recollection that the alleged discriminatory acts occurred on date(s)

September 18, 2023

C.     I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race   _____
- ☐ color   _____
- ☑ gender/sex   I am not a woman. I am a man
- ☐ religion   _____
- ☐ national origin   _____
- ☑ age *(year of birth)*    1962    *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*

  See attached - "Disabilities Explanation"

E.     The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached - "Facts of My Case for Complaint"

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

I filed online with the Ohio Civil Rights Commission on 7/5/24. I was assigned case number TOLB2 (008042)07052024. I verified by phone that the OCRC cross-filed my claim with the EEOC on or around 8/20/24.

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☐   issued a Notice of Right to Sue letter, which I received on *(date)*   06/17/2025    .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached - "Relief Request for Complaint"

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    9-2-25

Signature of Plaintiff

Printed Name of Plaintiff    MICHAEL LEE BROWN

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**TABLE OF CONTENTS FOR COMPLAINT PACKAGE**
For
**Michael Lee Brown vs Hitachi Astemo Americas, Inc.**
**EEOC Charge Number: 22A-2024-04227**

1. Table of Contents

2. Complaint for Employment Discrimination – 6 pages

3. Section III.A - Statement of Claim - Other Acts – 1 page

4. Section III.D - Statement of Claim – Disabilities Explanation – 5 pages

5. Section III.E - Statement of Claim - Facts of My Case for Complaint – 8 pages

6. Section V. - Relief – Relief Request for Complaint – 7 pages

7. Employment Discrimination Charge filed with the OCRC – 3 pages

8. Notice Concerning Title VII Sex Discrimination Claim – 1 page

9. Exhibit A - Evidence of Title VII Claim with the EEOC – 2 pages

10. Ohio Civil Rights Commission – Notice of Right to Sue – 1 page

11. U.S. Equal Employment Opportunity Commission – Notice of Right to Sue – 1 page

12. Notice of Pro Se Filing for this Court Case – 1 page

**Statement of Claim Section A Other Acts**

**From uscourts.gov website - Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination Section III.A – of the Complaint for Federal Employment Discrimination**

-------------------------------------------------------------------------------------------------------------------

**Statement of Claim – Section A.**

The discriminatory conduct of which I claim in this action includes *(check all that appy):*
(NO = unchecked, YES = checked)

**NO**      **Failure to hire me**
**NO**      **Termination of my employment**
**YES**     **Failure to promote me**
**YES**     **Failure to accommodate my disability**
**YES**     **Unequal terms and conditions of my employment**
**YES**     **Retaliation**
**YES**     **Other Acts (specify)**

> **( 1 )** Employer demoted 60-year-old man (me) with 6 years in the Quality Department and 29 years of total Quality Department/Cast Iron Machining experience – for no apparent reason – and replaced me with multiple younger workers, at the same pay rate, with lesser or no Quality Department experience.

> **( 2 )** Employer failed to hold my job (or a job of equal pay and level) for me following my return from FMLA leave.

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

END OF DOCUMENT

**Disabilities Explanation**
**From uscourts.gov website - Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination**
**Section D – of the Complaint for Federal Employment Discrimination**

----------------------------------------------------------------------------------------------------------------

**Statement of Claim – Section D**
Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
(NO = unchecked, YES = checked)

**NO**   race
**NO**   color
**YES**  gender/sex
**NO**   religion
**NO**   national origin
**YES**  age *(year of birth)* __**1962**__ *(only when asserting a claim of age discrimination.)*
**YES**  disability or perceived disability *(specify disability)*

----------------------------------------------------------------------------------------------------------------

**Specification of the disabilities from February 2022 (19 months preceding the day of the demotion) to September 18, 2023 (the day of the demotion).  All medically necessary absences and required time off occurred within a period of 11 months, within that 19-month period.**

**Knee Problems** – Had 2 knee surgeries.  One in March 2022 and the other in April 2023. Had to use nearly 3 months of FMLA leave each time, to cover my time off recuperating from the surgeries (nearly a total of 6 months (3 months in 2022 and 3 more in 2023) out of the year preceding my demotion). Had to use a cane at work from May 2022 to April 2023 – (13 months).  Upon return from FMLA leave following my last knee surgery, and not thinking at all that it might be used against me, I expressed to my manager that I would probably need to have a total knee replacement done of the left knee as well, eventually.  But that I hoped that it wouldn't be too soon.
Official disabilities were: difficulties walking, standing, carrying, lifting, kneeling, rising from a seated position, etc.

**Kidney Stone Problems** – Had 3 bouts of kidney stones that landed me in the hospital for surgery 3 times within the 19 months preceding my demotion.  All 3 being within 11 months of each other, in the year before my demotion, and totaling 2 weeks and 6 days.

<mark>Official disabilities were: inability to work due to extreme pain.</mark>

**Disabilities Explanation of the Complaint**

The extent of the disabilities and medical issues that I incurred in the 19 months leading up to my demotion requires some explanation to fully understand how one might believe that they factored into the reason that my employer removed me from my position.

Note: I was promoted to my Quality Staff position in the employer's Quality Department in 2017. Prior to receiving that promotion I had to have arthroscopic surgery to repair torn menisus in my left knee. On my first day in my newly promoted position to Quality Staff over Caliper Machining, I expressed my fear to my direct supervisor – Quality Coordinator April Cannon – that I might have difficulty with all of the walking and stair climbing I would have to do in the position. April told me that one of the nice things about being in a job like mine was that I could stop and take breaks whenever I felt I needed to.

**Timeline of Disability Issues**

From June 2019 to June 2022, I had multiple health issues that required me to miss work and take FMLA leave, on several occasions.

Issue #1 - June 2019 – Had my first bout with kidney stones. Was off work for around 1 week. Used Call-In Vacation Days (CIVs) and the weekend to cover the time off.

Issue #2 – June 2019 – Had developed a deep infection in my left elbow (cellulitis) following an injury at home, that required 2 surgeries to clean out. Was off work for 6 to 8 weeks total. Used FMLA Leave to cover the time off.

Issue #3 – (32 months later) – February 2022 – Had my second bout with kidney stones. Had to take 3 days off work, and a weekend, to cover the time off.

Issue #4 – (1 month later) – March 2022 – Injured my right knee. Had to have arthroscopic surgery. Was off work for 8 weeks on FMLA Leave.

Issue #5 – (2 months later) – May 2022 – Right knee not getting better. Getting worse. Had to start using a cane to walk with, EVEN AT WORK – and I had NEVER seen ANYONE use a cane at work EVER BEFORE! Nobody in management said anything about it – but, what could they say? I needed it to get around. I would end up having to use the cane for 13

Disabilities Explanation                          Page 2 of 5

months, as I tried a variety of treatment options, under the care of my orthopedic doctor, to try to heal the knee.

Issue #6 – (5 months later) – October 2022 – Had my third bout with kidney stones. Had to take 3 CIV days and a weekend to have surgery and recover.

Issue #7 – (1 month later) – November 2022 – Informed my managers that my knee was not improving and that I had decided to schedule a total knee replacement surgery for the beginning of the next year.

Issue #8 – (2 months later) – January 2023 – Had my fourth bout with kidney stones. Had stones in both kidneys and had to have emergency surgery and spent 4 days in the hospital. Used 2 weeks of FMLA leave.

Issue #9 – (3 months later) – April 2023 – Had total knee replacement surgery on my right knee. Was off work for 10 weeks on FMLA leave.

Issue #10 - (2.5 months later) - June 29, 2023 – Returned to work following 10 week recuperation on FMLA leave for the total knee replacement surgery. Had a friendly conversation with my old Quality Manager John Gabel, wherein I told him I was feeling much, much better (thank you), but also relayed that my left knee was now bothering me somewhat as well. I told him I would probably have to have that knee replaced as well in the future, but that it (hopefully) wouldn't be anytime soon.

**Justification for my claim of Disability Discrimination** - I believe that the totality of my health problems over the time period indicated above, but especially in the 19 months preceding my demotion – that (1) caused me to have to take time off work, (2) use FMLA leave, (3) force my managers to reassign other quality department personnel to cover for my normal workload and responsibilities, (4) strained company resources – and the idea that my health issues and the problems they were causing for the company, might likely continue – played a major part in the company's decision to NOT give me the promotion they had been training me for, as well as their otherwise unprovoked removal of me from the Quality Department altogether.

**Other disabilities I had that my supervisors had been made aware of, that I do not believe factored into my demotion or denial of promotion:**

Disabilities Explanation                     Page 3 of 5

<u>Poor memory and difficulty remembering words and conversing</u> – I had to write everything down at work, in order to be able to provide specific details that might have been asked of me.  This partially came from an incident in 2001 wherein I was alone at home with the flu, and had a very high fever for more than 10 hours, that was measured at 106.7 when I was finally taken to the local hospital emergency room.  After getting my fever under control, the ER doctor told me very seriously to get a brain scan at my earliest opportunity, because I might have suffered some brain damage.  While the scan that I got did not turn up anything conclusive; I suffered for years with an inability to remember words that I wanted to use in conversation, and while it gradually got better over the years, my scattered ability to remember details and words, in the middle of conversations, has created great difficulties for me in oral communications.  To be able to speak or converse effectively, I largely have to do it in writing.  It's extremely hard for me to structure my sentences and thoughts in the middle of a conversation.  While the majority of my managers were not made aware of this incident or issue, I had told my two direct supervisors about it (my Quality Coordinators – April Cannon and Deb Nunley – over Caliper Machining and Caliper Assembly respectively).

<u>Lower back issues</u> – Injured my back more than 30 years ago.  I have a lot of stiffness and pain when I'm bending over, picking things up, or carrying things.  Was diagnosed with 3 to 4 severely bulging discs in my lower back – 2 years ago – by a neurologist who suggested I seek surgery for it.  I have not followed the neurologist's advice, and simply continue to deal with it as best as I can.

**<u>Disabilities that my employer (and I) were not aware of</u>** – I've always known that there was something different about the way that I think, behave, and act – when compared to the majority of other people – and only after having had two grandsons born with autism, did I seriously begin to wonder if I may be on the autism spectrum as well.

While I have not yet been officially diagnosed with **<u>Autism</u>**, **<u>ADHD</u>**, or **<u>Aspergers Syndrome</u>**, I currently exhibit symptoms of all three but since childhood have developed a strong ability to mask any symptoms I might have, in the presence of others -- in order to fit in socially.  I am currently in the process of meeting with counselors and medical professionals to obtain professional assessments and official diagnoses.

<u>Symptoms of autism that I possess as an adult are</u>:
Reluctance to engage socially (social interaction barriers – am quiet and introspective),
Challenges taking turns in conversation (conversational difficulties/interrupting),
Monopolizing conversation with one's own interests or thoughts,

Disabilities Explanation                          Page 4 of 5

Hyperfocus (intense focus behavior),
Abnormalities in eye contact and body language,
Literal interpretation of language (language processing issues),
Frustration and anxiety over unexpected changes in routines and schedules,
Extreme rigidity in what I believe is right and wrong (flexibility limitations).

Symptoms of ADHD that I possess are:
Anxiety (emotional distress),
Emotional concerns (mood fluctuations),
Hyperfocus (intense concentration),
Forgetfulness (memory lapses)
Impulsivity (hasty actions),
Fatigue (exhaustion issues).

Symptoms of Asperger's Syndrome that I possess are:
Anxiety about social situations (social anxiety issue),
Difficulty making friends (social relationship barrier),
Preference for solitude (social preference trait),
Literal interpretation (communication style issue),
Routine preference (behavioral consistency need),
Difficulty engaging with others (social engagement issue),
Focused interests (intense interest characteristic),
Sensory sensitivity to bright light and loud sounds (sensory processing trait).

While some of the symptom characteristics mentioned above definitely have negative downsides to them, I believe that my hyperfocus, preference for solitude, introspective thinking, literal interpretation, and preference for having routines, create more positives for me than negatives.  So, it is really hard for me to consider these three abnormalities that I beilieve I possess, as disabilities, in the way that we traditionally view disabilities.  They are more like what makes me different and gives me advantages over others, in creative and investigative thinking.

END OF DOCUMENT

**Facts of My Case for Complaint**
**From uscourts.gov website - Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination**
**Section III.E. of the Complaint for Federal Employment Discrimination**

-------------------------------------------------------------------------------------------

Instructions:
( A ) Write a short and plain statement of the claim.
( B ) Do not make legal arguments.
( C ) State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.
( D ) State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.
( E ) If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.
( F ) Attach additional pages if needed.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

-------------------------------------------------------------------------------------------

Around February of 2012, Mr. Brown was hired by Nissin Brake Ohio (NBO) as a temporary worker through Spherion Temporary Services, to work as a laborer/machine operator. On January 30, 2013, Mr. Brown was hired in as a full-time permanent general associate, and shortly thereafter had injured his left knee and had to have surgery to repair torn meniscus. This began Mr. Brown's work-life suffering with knee disabilities.

In 2017, Mr. Brown received a promotion to the position of Quality Staff assigned to the machining side of the Caliper Products Division at the Findlay Plant and continued to work for the company with said disabilities. Between February 2022 and July 2023, Mr. Brown suffered many health emergencies that required him to take off work – 3 separate bouts with kidney stones requiring time off each time (including 2 weeks of FMLA leave) - 1 surgery to repair torn meniscus in the right knee (off work at least 10 weeks (2.5 months)). That surgery ultimately failed to resolve the problem and Mr. Brown had to begin using a

cane at work for 9 months until he underwent another surgery to perform a total replacement of the right knee (off work for another 8 weeks (2 months).

On June 29, 2023, Mr. Brown returned to work following the end of his FMLA leave for the total knee replacement. On that day, Mr. Brown had a casual conversation with Senior Operations Manager John Gabel, wherein Mr. Brown expressed that his right knee was great, but his left knee had gotten worse and would probably have to be replaced sometime in the future, as well.

4 weeks later, on July 24, 2023, Mr. Brown was called into a meeting with his Quality Assurance Manager Emily Diemer, wherein he was told that beginning the next week, she was switching the roles around between Mr. Brown and Meleah Stevens, because she felt that it would be a better fit for each of their different strengths and skillsets, and would work out better for all concerned. (Mr. Brown occupied the position of "Quality Staff over Caliper Machining", and Ms. Stevens occupied the position of "Quality Coordinator over Caliper Assembly" – so Mr. Brown assumed he was going to be trained on that job, and be offered that promotion, if he indeed worked well in the position. Which was how the company often promoted people to management positions, when they needed to fill a position quickly.)

For 7 weeks, between July 31, 2023 and September 11, 2023, Mr. Brown trained to take over the Quality Coordinator over Caliper Assembly position, with the woman (Deb Nunley) that had just retired from it, and who had previously been training Meleah Stevens on the job, prior to the switch. (Mr. Brown heard that the switch occurred because Ms. Stevens had not been meeting the QA Manager's expectations of her in that role.)

On Monday, September 11, 2023, Mr. Brown was called into a private meeting with Senior Operations Manager John Gabel, in which Mr. Brown expected that Mr. Gabel was going to offer him the promotion to Quality Coordinator, that he had been training on and performing for the last 7 weeks. However, Mr. Gabel instead said "The company has said that we need to cut the budget in the Quality Department, therefore, we're going to be returning you to the production department."

Mr. Brown questioned Mr. Gabel about how he could justify removing him from his position and sending him back to production, when Mr. Brown had 6 years in his position in the Quality Department, and had no writeups or disciplinary actions of any kind, along with perfect attendance, and 2 younger and lesser experienced colleagues (with only around 1 year each in the department), one of which had multiple writeups for tardiness and missed

work. That is when Mr. Gabel said "On your last evaluation, there was something on there that said you needed improvement on something."

"First of all, are you talking about the last evaluation that I got 3 years ago? When I'm supposed to be getting an evaluation every year? – And I'm the only one around here that needs improvement on something, John." Mr. Brown asked. "So, what did this evaluation say I needed improvement on?"

"I don't know. It just said you needed improvement on something." John said.

"So, what is this returning to a position in production supposed to look like?" I asked.

"I don't know." John said. "I haven't informed the production department yet, so the details all still need to be worked out."

"And when is it supposed to happen?", Mr. Brown asked.

"Soon. Within a week or so.", John said.

On Friday, September 15, 2023, Mr. Gabel thanked Mr. Brown for not just quitting or causing a scene, and staying on and doing a good job all week, but that Mr. Brown was going to be reassigned to the production department the very next Monday. Mr. Gabel said that Matt Stapleton, who had previously been Mr. Brown's Quality Engineer prior to Stapleton's promotion to Assistant Operations Manager, would be meeting with him before the end of the day, to give him his new assignment.

When Mr. Stapleton met with Mr. Brown later that day, he informed Mr. Brown that he had just been told about the move and had no idea that the company was going to be removing him from his position, and said they didn't have anything on 1st Shift right now, but he would work to find him something on 1st Shift anyway, in order to minimize the amount of upset in Mr. Brown's family life, but Stapleton also alluded to the fact that he (Stapleton) thought that the move was happening because of Mr. Brown's advanced age, when he said "This could happen to me, or any of us, someday... right?"

Before the end of the day, Stapleton informed Brown to report to the Repack Department on the following Monday morning, and that to expect to have a meeting to sign the Status Change paperwork before the end of Monday.

Over the weekend, Mr. Brown decided that while he suspected age discrimination as being the real reason why he was chosen to be sent back to production, instead of one of his younger and lesser-experienced associates, he decided he wouldn't fight the move as long as it was pretty much a sideways move, and as long as he didn't lose any money.

Monday, September 18, 2023. Mr. Brown reported to the Repack Department as instructed. At around 11am, Mr. Brown was called to a meeting to sign the Status Change paperwork. When Mr. Brown got there, he found that in attendance was: Senior Operations Manager John Gabel... Quality Assurance Manager Emily Diemer... Assistant Operations Manager Matt Stapleton... and Human Resources Manager Christina Spradlin.

Christina Spradlin placed the Status Change Form on the desk in front of Mr. Brown. Mr. Brown read it and found that it said he would be losing $2.00 per hour, and the form said that the Reason for the Status Change was "DEMOTION DUE TO JOB PERFORMANCE."

Mr. Brown was stunned. He never expected that. John Gabel had said only that the company needed to cut the budget in the Quality Department and that they had chosen to send Brown back to the Production Department instead of his younger and lesser-experienced colleagues. However, nothing had been said that Mr. Brown was going to be losing any money, or that he was being demoted due to some sort of unsubstantiated poor job performance. One must remember that Mr. Brown had never received any writeups or disciplinary actions of any kind, or was ever told that he was not meeting anyone's expectations of him in his Quality Coordinator role, that he had been training for and performing for the last 7 weeks, or in his Quality Staff role that he had previously held and performed for 6 years. And Mr. Brown was never tardy, never missed any work unexcused, and had perfect attendance. Therefore, there was no justification for demoting him due to job performance.

On that day, Mr. Brown and the group assembled at the Status Change Meeting discussed his situation, going back and forth, for nearly an hour. In the end, Mr. Brown signed the Status Change Form but wrote the following above his signature: "Do not agree. The demotion due to job performance is not agreed upon by me."

7 weeks later – on Tuesday, November 9, 2023 – the company reposted Mr. Brown's old Quality Staff job on the open jobs board at the Findlay Plant. How could the company say that his removal from his job was due to budget cuts, when they re-posted his job to the open jobs board 7 weeks later.

2 weeks later – on November 20, 2023 – Mr. Brown learned that the company had promoted 36-year-old Nicole Hamilton to his old Quality Staff position, and she had ABSOLUTELY NO EXPERIENCE WHATSOEVER IN A QUALITY ASSURANCE ROLE OR CAPACITY. Was this due to age discrimination, disability discrimination, sex discrimination, or a combination of all three?

On January 25, 2024 – 15 weeks after Mr. Brown's demotion and just 4 weeks after Nicole Hamilton was promoted to Mr. Brown's old Quality Staff position – Brown learned that the company had promoted another person to his old Quality Staff position – 36-year-old Stephanie Walland – because the company was forced to terminate Meleah Stevens from Mr. Brown's old Quality Staff position, because she pointed out for excessive tardiness. Even after Mr. Brown had argued with John Gabel about Meleah's attendance problems, requesting justification as to why he was being sent back to production, and not her, when her record was obviously worse than his; here was the proof that Mr. Brown had been correct in that analysis. Because he was still with the company and still had no write ups, disciplinary actions, and perfect attendance; and she had just been terminated. So, her record had to have been worse than his, when the company chose to demote him instead of her. Was this due to age, disability, or sex discrimination, or a combination of all three?

On February 15, 2024, Mr. Brown learned that the company had hired a younger woman from outside of the company – 54-year-old Robin Edwards – to the Quality Coordinator position that Mr. Brown had spent 7 weeks performing and being trained on, when the company decided to remove Mr. Brown from the Quality Department altogether. Was this due to age, disability, or sex discrimination, or a combination of all three?

## CLAIMS

### ( 1 ) Age Discrimination
Age Discrimination is claimed because it is the most visible manifestation in the company's perception of me, that explains why I have had multiple events of missed work due to disabilities and age-related health issues. Also, it is claimed because Mr. Brown was removed from his position for no real reason and replaced by a younger worker.

### ( 2 ) Disability Discrimination
Disability Discrimination is claimed because In the 18 months preceding Mr. Brown's removal from his position, allegedly due to required budget cuts, he missed a total of 21 weeks of work (nearly 5 months out of 18) due to disabilities and health issues. 3 bouts with kidney stones (the last one requiring 2 weeks of FMLA leave)... 1 arthroscopic surgery

on the right knee (requiring 8-12 weeks of FMLA leave for recovery)... having to use a cane at work to assist him in walking for 9 months... 1 total knee replacement surgery of the right knee (requiring 10 weeks of FMLA leave for recovery, ... the use of all 12 weeks of FMLA leave that he was allowed for the 2 years prior to his demotion... and relaying to Senior Operations Manager John Gabel, on his first day back from his last FMLA leave, that he'll probably have to have a total knee replacement of his left knee done sometime in the future (but hopefully not too soon), ... the Plaintiff believes that the company made its decision to remove him from the department as opposed to one of his younger and lesser-experienced colleagues, primarily because of this recent medical leave history, and the perceived probability that it could continue.

### ( 3 ) FMLA Retaliation

Among other things, FMLA requires that the employer must provide Job Protection – guaranteeing that employees can return to the same or an equivalent position after their leave – and that the employer Avoids Retaliation – Employers must not interfere with, restrain, or retaliate against employees exercising their FMLA rights. While the company was required to allow me to return to my job or an equivalent position, they instead initiated a plan to remove me from my job and did so. Therefore, the company did not provide job protection or avoid retaliation.

### ( 4 ) Failure to Promote (due to Age, Disability, and Sex Discrimination)

Meleah Stevens had been promoted to the position of Quality Coordinator over Caliper Assembly in or around December 2022, and had begun training in that role with the woman (Deb Nunley) that had just retired from it. On July 24, 2023, the QA Manager switched Mr. Brown and Meleah Stevens roles and responsibilities around and Mr. Brown began training in that role with the woman (Deb Nunley) that had just retired from it. Mr. Brown believed/believes that he was being trained to take over the Quality Coordinator over Caliper Assembly position – even though he had never applied for the promotion, because at the time it was made originally available, he was happy with his position in caliper machining, and felt that Meleah Stevens would be a good fit for the position. However, when Meleah apparently did not complete her training satisfactorily, and Mr. Brown was forcibly placed in the position by his QA Manager, Mr. Brown believed that he was being tried out to see if he would be a good fit for the position. On September 11, 2023, -- 7 weeks after Mr. Brown began his training in the Quality Coordinator position – when John Gabel called Mr. Brown into a private meeting, Mr. Brown believed that Gabel was doing so in order to offer him the Quality Coordinator position that he had been performing and being trained on, for the last 7 weeks. Instead, Gabel informed Mr. Brown that the company needed to cut the budget in the Quality Department, and that he (60-year-old

Brown) was going to be returned to the production department, while his younger and lesser-experienced colleagues, in his same classification, were going to be kept... even though one of them had an employment record that was worse than Brown's.

**( 5 ) Failure to Accommodate a Disability**

The Americans with Disabilities Act (ADA) of 1990 defines a disability as a physical or mental impairment that substantially limits one or more major life activities and that **Employers <u>must</u> engage in an interactive process with employees to identify potential accommodations, ensuring open communication and collaboration.** To pursue legal action for failure to accommodate a disability, employees must demonstrate three key elements: **<u>disability status</u>, <u>qualification for the role</u>,** and the **<u>employer's failure to provide reasonable accommodations</u>**. (1) Mr. Brown's disability status is verified with his medical records. (2) Mr. Brown's qualification for the role is verified by his 7 weeks of training in the role along with him having received no indications from his managers that he was not meeting any of their expectations of him. (3) employer's failure to provide reasonable accommodations is verified by the fact that while Mr. Brown asked for no accommodations because none of his managers ever stated that they had any problems with anything he had been doing, or needing to do – the ADA requires employers to actively engage in dialogue to explore possible accommodations, and failure to do so can constitute a violation. The interactive process is a critical component of the ADA's accommodation requirements, serving as a collaborative dialogue between the employer and employee to identify and implement suitable accommodations. This process is a legal obligation that requires both parties to engage in good faith. The EEOC emphasizes that the interactive process should begin promptly once an accommodation request is made <u>or when the employer becomes aware of the need for accommodation</u>. Failure to engage in the interactive process can significantly impact legal proceedings. <u>Courts have ruled that an employer's lack of participation or unreasonable delay in the process can constitute a violation of the ADA</u>.

**( 6 ) Gender Discrimination**

Gender Discrimination is claimed because there is a substantial amount of circumstantial evidence to indicate that Mr. Brown's removal from his positions, both as Quality Staff and as Quality Coordinator Trainee, could have been attributed to the fact that he was not a woman. Mr. Brown believes that this facet of his claims begins with the promotion of Emily Diemer (a woman) to the role of Quality Assurance Manager, after John Gabel (a man) left the position vacant with his acceptance of a promotion to Senior Operations Manager. Mr. Brown states that this facet of his claims is derived from his belief that Emily Diemer simply prefers to work around other women, as opposed to men. This belief being

supported by the following facts: (1) Meleah Stevens (a woman) was kept in Mr. Brown's position that he had held for 6 years with no writeups, no disciplinary actions of any kind, and perfect attendance , while Meleah had only around 1 year in the department, and had multiple write-ups for tardiness and missed work.  (2) The first person the company promoted to Mr. Brown's old Quality Staff position, after removing him from it, was Nicole Hamilton (a woman).  (3)  The second person the company promoted to Mr. Brown's old Quality Staff position, after he was removed from it, and Meleah Stevens had to be terminated after pointing out, was Stephanie Walland (a woman).  (4) Holly Mankin, who had been promoted to an unknown position within the Quality Department, which never got placed on the open jobs board but she held for nearly a year, was terminated from the company the very next week after I raised the gender issue during the OCRC mediation meeting between the plaintiff and defense teams.  With the reason for her termination allegedly being that "her projects had been (unexpectedly) concluded".  (5) The company hired Robin Edwards (a woman) for the same Quality Coordinator position that I had been training to take over for 7 weeks, prior to my demotion and return to the production department.  Multiple other gender-based realignments took place within the Quality Department following Diemer's promotion to QA Manager.

## ( 7 ) Unequal Terms and Conditions of Employment
Unequal Terms and Conditions of Employment is claimed because (1) A younger woman with a worse employment record than Mr. Brown's, was kept while Mr. Brown was returned back to production, (2) Mr. Brown was demoted from his Quality Staff position, while never having received any writeups or disciplinary actions of any kind, (3) Mr. Brown's managers never had any discussions with him to say he was not meeting any of their expectations of him, (4) It seems that Mr. Brown was being held to a higher standard than anyone else – i.e. an evaluation that says he "needs improvement" as a basis for removing and demoting someone from their job, etc., when someone with disciplinary actions on their record were allowed to keep that job.

END OF STATEMENT

**Relief Request for Complaint**

**From uscourts.gov website - Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination**

**Section V. of the Complaint for Federal Employment Discrimination**

**Directions:**

- State briefly and precisely what damages or other relief the plaintiff asks the court to order.
- Do not make legal arguments.
- Include any basis for claiming that the wrongs alleged are continuing at the present time.
- Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.
- Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

**PLEASE NOTE:** The directions above say nothing about limiting relief requests to maximum state or federal caps, and so it is with this in mind that I make the following relief requests pursuant to what I believe each aspect of my pain and suffering is worth to me, along with amounts on punitive damages that I believe are required to make the employer think twice about discriminating against any other employees, in a similar manner, in the future.

-------------------------------------------------------------------------------------

**( 1 ) BACK PAY**

Lost wages from Demotion from Quality Staff job of approximately $275.30 per week ($1,192.97 per month) beginning in October 2023 to the date of the case's resolution.
(Damage is ongoing)

Lost wages from Failure to Promote to Quality Coordinator due to Age and Disability Discrimination, of approximately $2.00 per hour ($80.00 per week or $346.67 per month) beginning in October 2023 to the date of the case's resolution.
(Damage is ongoing)

Lost retirement contributions of $63.33 per week ($274.43 per month) beginning in October 2023 to the date of the case's resolution.
(Damage is ongoing)

Money lost by plaintiff in paying co-pays to mental health professionals, due to the discriminatory actions he was subjected to.  Plaintiff will supply a record of the total amount of co-pays he paid out, at the successful completion of the case.

(Damage is ongoing)

-----------------------------------------------------------------------------------

### ( 2 ) FRONT PAY

Lost wages from Demotion from Quality Staff job of approximately $275.30 per week ($1,192.97 per month) beginning from date of case resolution to plaintiff's 67th birthday. (Plaintiff was not expecting to be able to retire until age 67.)

Lost regular wages of $900.00 per week ($22.50 per hour x 40 hours per week) in my current position as a general associate ($3,900.00 per month), beginning from the date of case resolution to plaintiff's 67th birthday (Plaintiff was not expecting to be able to retire until age 67.) I request this relief because I will not be able to return to working for this employer, and at my age, have little hope of being able to find employment in a similar managerial position, like the one my employer removed me from.

Lost wages from Failure to Promote to Quality Coordinator due to Age and Disability Discrimination, of approximately $2.00 per hour ($80.00 per week or $346.67 per month) beginning from date of case resolution to plaintiff's 67th birthday. (Plaintiff was not expecting to be able to retire until age 67.)

Lost retirement contributions of $63.33 per week ($274.43 per month) beginning from date of case resolution to plaintiff's 67th birthday. (Plaintiff was not expecting to be able to retire until age 67.)

Lost health benefits will require approximately $1,000 per month to insure the plaintiff on the open market, beginning from the date of case resolution to plaintiff's 67th birthday. (Plaintiff was not expecting to be able to retire until age 67.)

-----------------------------------------------------------------------------------

### ( 3 ) COMPENSATORY DAMAGES (suggested)

**(3.1)** Loss of Status/Humiliation (Damage is ongoing)
--------- = $100 per week (until case resolution).

**(3.2)** Increased physical stress due to production job (Damage is ongoing)
--------- = $100 per week (until case resolution).

Relief Request for Complaint                              Page 2 of 7

**(3.3)** For not being able to tell my parents to avoid stressing them out and potentially increasing their health problems, thereby negating my ability to turn to them for emotional and financial support.  (Damage is ongoing)

--------- = $500 per month = $115.38 per week (until case resolution).

**(3.4)** For making me think about killing myself.  (Damage is ongoing)

--------- = $100 per day = $36,500 per year = $3041.67 month = $701.92 per week (until case resolution).

**(3.5)** For making me wish I would just drop dead.  (Damage is ongoing)

--------- = $100 per day = $36,500 per year = $3041.67 month = $701.92 per week (until case resolution).

**(3.6)** For every day that I've had to worry about my finances.  (Damage is ongoing)

--------- = $100 per day = $36,500 per year = $3041.67 month = $701.92 per week (until case resolution).

**(3.7)** For every day that I've had to deal with my wife and her worrying about our finances.  (Damage is ongoing)

--------- = $100 per day = $36,500 per year = $3041.67 month = $701.92 per week (until case resolution).

**(3.8)** For the harm that this event has brought to my marriage.  (Damage is ongoing)

--------- $50 per day = $18,250 per year = $1,520.83 per month = $350.96 per week (until case resolution).

**(3.9)** For the harm that this event has brought to my relationship with my adult kids and grandkids  (Damage is no longer ongoing) .

--------- $1,000 per month = $12,000 per year = $230.77 per week.  (until case resolution).
(Damage is no longer ongoing)

**(3.10)** For making me question myself and wonder about my sanity.  (Damage is ongoing)

--------- $20 per day x 7 days = $140 per week.  (until case resolution).

**(3.11)** For making my holidays in 2023-2024 completely miserable.  (Damage is no longer ongoing)

--------- $500 per event x 6 events - Single Amount $3,000

**(3.12)** For making me have to go through the stress and the process of having to take my employer to court to redress my grievances and do everything I can do to make Hitachi management learn from this mistake, so they never do this to another person again.  (Damage is ongoing).

--------- Single Amount = $25,000

**(3.13)** For the sadness that I feel from having someone who I thought was my friend (John Gabel), stab me in the back.  (Damage is no longer ongoing)

--------- Single Amount = $0.00

**(3.14)** For alienating me from what was my work family and team. (Damage is no longer ongoing)
--------- Single Amount = $2,000

**(3.15)** For forcibly changing my retirement plans. (Damage is ongoing)
--------- Single Amount = $10,000

**(3.16)** For taking away my opportunity at the last minute to really show my managers what I'm truly capable of, and the innovative solutions that I could have brought to the company, and for taking away my opportunity to rise to the apex of my career. (Damage is ongoing)
--------- Single Amount = $5,000 per year until age 67.

**(3.17)** For causing the strained relationships with the employees (former friends) that replaced me.
--------- Single Amount = $2,000 (Damage is ongoing)

**(3.18)** For causing the strained relationships that I now have with all of the people I work with, who knew me from my previous role.
--------- Single Amount = $2,000 (Damage is ongoing)

**(3.19)** For making me feel conscientious about what might be wrong with me, that I was not good enough for my managers at Hitachi Astemo. (Damage is ongoing)
--------- Single Amount = $3,000

**(3.20)** I have not had a single moment of happiness that was not overshadowed by a deep loss in self-esteem and confidence, since the day I was discriminated against and demoted. (Damage is ongoing)
--------- Single Amount = $15,000

**(3.21)** For making me feel like my working/career life is over. (Damage is ongoing)
--------- Single Amount = $10,000

## TOTAL VALUE OF PLAINTIFF'S PERCEIVED PAIN AND SUFFERING AND COMPENSATORY DAMAGES = $644,702

-------------------------------------------------------------------------------------

## 4. PUNITIVE DAMAGES

**(4.1)** For demoting an older worker with disabilities from a managerial job to a fast-paced and physically grueling manual labor job, without good cause. Not caring about my health or offering accommodations.
= $1.5 Million

**(4.2)** For lying and saying first I was being removed from my position because the company needed to cut the budget in the Quality Department -- and secondly, that I was being demoted due to poor job performance, when – in actuality – it was because of my age, age-related disabilities, and other protected legally protected characteristics, for which the jury adjudicates that the defendant is guilty of.
= $1.5 Million

**(4.3)** For thinking it was okay to release an older worker with a stellar record, while keeping a younger worker with documented disciplinary issues in my place.
= $1.5 Million

**(4.4)** For the company deciding to pursue a policy of pushing out older employees.
= $1.5 Million

**(4.5)** For acting hypocritically in expecting employees to be loyal and committed to the interests of the company, while showing that the company has no loyalty or commitment to the interests of their employees.
= $1.5 Million

**(4.6)** For my manager not talking to me about any problems with my job performance that they might have had, and simply removing me from my job with no real reason or provocation.
= $1.5 Million

**(4.7)** For demoting me for no reason, whereby the rules of the company state that demotion carries with it the inability to bid on a better job than the one the demoted person gets demoted to, for a period of not less than 12 months.  Thereby not allowing me to bid on my old job, when it was re-posted to the open jobs board 7 weeks after I was demoted from it.  And, thereby making it impossible for me to bid on a better job with the company for a total of 12 months.
= $1.5 Million

**(4.8)** For not performing performance evaluations in compliance with their own policy about how often employee performance evaluations are to be conducted.
= $1.5 Million

## TOTAL VALUE OF PLAINTIFF'S SUGGESTED PUNITIVE DAMAGES
## = $12 Million

-------------------------------------------------------------------------------------

## 5. Liquidated Damages
An amount equal to the amount of back pay awarded, when the employer acts willfully.

------------------------------------------------------------------------------------

### 6. Equitable Relief

Policy Change – The company should not be able to demote or terminate an employee without them first having been written up and disciplined in some way, in accordance with the company's policies on rule infractions.

------------------------------------------------------------------------------------

### 7. Attorney's Fees and Costs

If the employee prevails, they may recover reasonable legal fees and litigation costs from the employer. I am requesting that the employer compensates me for the totals of my attorney fees, court costs, or costs of litigation, should I win.

------------------------------------------------------------------------------------

## NOTE ON DAMAGE CAPS FOR PUNITIVE DAMAGES

If the jury does not wish to award these punitive damages to me, the plaintiff, personally, then I would request that they (or a portion of them) be paid to the non-profit organization – Workforce Partners Against Age Discrimination – that I am founding in order to combat the problem of Age Discrimination in the Workplace, across the United States.

I believe that a failure to hold employers of the size of Hitachi Astemo Americas, Inc., and it's parent company Astemo – a joint venture between Hitachi, Honda, and JIC Capital – (with its 80,000 employees world-wide and 14,000 employees based in the Americas across more than 40 offices and manufacturing sites) – a travesty that simply guarantees that the discriminatory policies and actions of employers like Hitachi Astemo Americas, will continue.

It will take larger damage awards than $300,000 to make Hitachi Astemo change its ways. And, if the judge decides that the $300,000 cap on the compensatory and punitive damages must be upheld, it will at least be helpful to my new-found cause (combatting Age Discrimination in the Workplace) to have the jury issue an award amount commensurate with their true feelings on what they feel Hitachi Astemo should pay in compensatory and punitive damages, based on the company's actions in this case – then the judge can knock down the jury award to the level of the caps, or let it stand, however he or she so desires.

Such an action will at least draw the public's attention to the issue and point to the fact that new dialogue is required surrounding the subject of age discrimination in the workplace, as well as the need for legislative changes surrounding employment law, in America today.

END OF DOCUMENT

# Employment Discrimination Charge

Case Number        TOLB2(008042)07052024
                   22A-2024-04227

 **Ohio Civil Rights Commission**

## Charging Party Information

| First Name* | Middle Name | Last Name* |
|---|---|---|
| MICHAEL | L. | BROWN |

**Address***
103 S. ADAMS STREET

| Zip Code* | City* | State* | County* |
|---|---|---|---|
| 44830 | FOSTORIA | OH | OHIO |

| Telephone* | Email* |
|---|---|
| (419)701-1538 | MLBROWN.62@YAHOO.COM |

**Do you have a Legal Representative to add?***
◯ Yes  ⦿ No

## Employer Information

**Employer Name***
HITACHI ASTEMO AMERICAS INC. – FINDLAY, OHIO PLANT

**Employer Address***
1901 INDUSTRIAL DRIVE

| Date of Hire | Telephone* |
|---|---|
| 01/30/2012 | (419)425-6725 |

| Zip Code* | City* | State* | County* |
|---|---|---|---|
| 45840 | FINDLAY | OH | HANCOCK |

| Total Number of Employees* | Position Held (or Being Sought) |
|---|---|
| >20 | QUALITY STAFF |

## Most Recent Date of Discrimination | Must have occurred within TWO YEARS from the charge filing date

**Date of Discrimination (Include other dates in your narrative below)***
09/18/2023

## I was discriminated against on the basis of

☐ Race            ☑ Disability (DO NOT IDENTIFY)        ☐ Color

☐ Retaliation     ☐ Religion                            ☐ Military Status

☐ National Origin ☐ Ancestry                            ☑ Age (40 or over)

                  ☐ Sex                                 **Date of Birth***
                                                        11/04/1962

PAGE 1 OF 3

Please briefly explain your selection(s) above if applicable (max 100 characters)

AGE AND DISABILITY ARE PRIMARY REASON.

I was subjected to:

☑ Demotion                      ☑ Discharge/Termination              ☐ Discipline

☑ Denial/Failure to Hire        ☐ Constructive Discharge/Forced      ☑ Harassment/Sexual Harassment
                                   Resignation
☐ Layoff/Denial of Recall                                            Denial of Reasonable
                                ☑ Denial of Promotion                ☑ Accommodation (Disability or
☑ Other                                                              Religion)
                                ☑ Different terms & Conditions of
                                   Employment                        ☐ Unequal Pay – Based on sex
                                                                        only

Please briefly describe the discriminatory act. (max 100 characters)*
WAS TERMINATED FROM MY QUALITY POSITION BUT ALLOWED TO STAY ON IN AN ENTRY LEVEL PRODUCTION
POSITION

PAGE 2 OF 3

Please write a short statement detailing the act(s) of discrimination and why you believe it is discrimination. In your statement, include information as to who committed the act of discrimination (name and position), any reason given for the act of discrimination, when the acts occurred and names of others treated more favorably than you. (max 2600 characters)*

I was the most senior of 3 Quality Staff people within my department, with 6 years in the job (age 60) – zero writeups – zero coach & counselings – zero points – never late – never missed work unexcused.

My 2 colleagues were younger and had less time on the job. (Meleah Stevens – 1.5 years. Age 34? Had writeups for tardiness and missed work.)(Dave Miller – 2.0 years. Age 40? Disciplinary Actions unknown). Having been on the job for 6 years, these 2 colleagues often turned to me for guidance.

On 9/11/23, the Sr. Operations Mgr (John Gabel) told me Hitachi had said they needed to cut the budget in the Quality Dept and so they were releasing me back to production.  (Releasing 60 yr old most senior employee. Keeping 2 younger, less experienced)

On 9/18/23, After starting the day in my new entry level production job, I met with John Gabel, Qual Mgr Emily Diemer, Qual Engineer Matt Stapleton, and HR Mgr Chris Spradlin, to go over and sign my status change paperwork.  I suspected I was being discriminated against but had decided that as long as the move would be sideways or better and that I wasn't losing money, I wouldn't fight it.  The status change paperwork indicated that I was losing $2 per hour and being DEMOTED DUE TO JOB PERFORMANCE!

I WAS SHOCKED!  The only reason John could give was that on my last eval (from 2 years prior) (Got 2 evals in 6 yrs when supposed to get yearly), it said that I "needed improvement on something", and he couldn't even tell me what it said I needed improvement on.

7 weeks after demotion, my old Quality Staff job got reposted to the job board.

2 weeks after that they promoted a 36 yo woman to replace me.

2 weeks later they had to terminate Meleah (who the company kept in favor of me) for tardiness, and promoted another 36 yo woman to replace her.

20 weeks after my demotion, the company hired a new 54 yo woman named Robin, to the Quality Coordinator position that I had been performing and being trained for, in the 7 weeks leading up to my demotion.  While I could understand this if I had not been meeting expectations, but no one ever pulled me aside and said I was lacking in, or needed to improve, in any area of my performance.  In fact, I believed that when John Gabel initially said that he wanted to meet with me, I thought he was calling me in to offer me that promotion.  Instead, I got demoted (terminated) from my position in the Quality Dept... reassigned to an entry level position in the production department... and because I had been demoted, could not even bid on any other job in the company for a minimum of 12 months.

## Declaration

I hereby declare and affirm that the information provided in this charge is true and accurate to the best of my knowledge and belief under penalty of perjury. *

Charging Party Signature (Use your finger or mouse to sign)*

Submission Date
07/05/2024

PLEASE NOTE: Under division (A) of section 4112.052 of the Ohio Revised Code, you are prohibited from bringing a civil action under this chapter unless one of the following applies: (a) The conditions stated in division (B)(1) of section 4112.052 of the Ohio Revised Code are satisfied; (b) An exception specified in division (B)(2) of section 4112.052 of the Ohio Revised Code applies.

PAGE 3 OF 3

**Notice Concerning Title VII Sex Discrimination Claim**

When examining the Employment Discrimination Charge filed with the Ohio Civil Rights Commission you will notice that at the bottom of page 1, in the section with the heading "I was discriminated against on the basis of", it does not indicate "Sex" as being one of the ways in which I was discriminated against.  It was only after filing this initial charge that I realized that discrimination on the basis of sex, may have also played a role in the discriminatory acts that my employer perpetrated against me.

While I do not have at this time, nor could I provide at this time, direct evidence from the OCRC or EEOC, that claims of sex discrimination were filed with those agencies on my behalf, thereby allowing me to claim Title VII of the Civil Rights Act of 1964 as a basis for jurisdiction in Section II of this Complaint, and allowing me to claim gender/sex as being a manner in which the defendant discriminated against me, as indicated in Section III.D of this Complaint; I have provided a copy of an email from my attorney Samantha Hudler to Mr. Jeremy Sells, State, Local and Tribal Coordinator at the EEOC, that shows my then attorney Ms. Hudler referencing that "The charge was also filed under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act ("ADEA").

I have provided a copy of that email (immediately following this notice) as the only proof that I currently possess, that indicates I am eligible to claim sex discrimination under Title VII, in connection with my case.

I have provided this notice only to draw the court's attention to this abnormality in my filings, and to try to explain it before the court concludes that I am not entitled to the sex discrimination claim under Title VII,

I await the court's ruling on this matter, and or instructions on how the court might want me to resolve this matter.

Page 1 of 1

# WHITE, ROSE & HILFERTY, P.C.

## ATTORNEYS AND COUNSELORS-AT-LAW

Partners
Vincent P. White
Michael P. Hilferty
Jesse C. Rose

Senior Associate
Samantha E. Hudler

Associates
Tuba J. Farooqui
Francesca A. Miranda
Bianca Acquaviva

Firm Administrator
Victoria Adamo

Email: *Hudler@NYCJobAttorney.com*
Direct: 917-565-8763

May 6, 2025

**Via Email**: *jeremy.sells@eeoc.gov*
Mr. Jeremy Sells
State, Local and Tribal Coordinator
Equal Employment Opportunity Commission
Indianapolis District
115 W. Washington St., Suite 600S
Indianapolis, IN 46204

> **Re:** *Michael Brown v. Hitachi Astemo Americas, Inc.*
> Charge No.: TOLB2(008042)07052024/22A-2024-04227

Dear Mr. Sells,

Please be advised that this office represents Michael Brown in the above-referenced matter. Mr. Brown filed a Complaint with the Ohio Civil Rights Commission charging the above-named Respondent with unlawful discriminatory and retaliatory practice relating to employment in violation of state and local statutes. The charge was also filed under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act ("ADEA").

After investigation, the Ohio Civil Rights Commission determined that it is not probable that Respondent has engaged in the unlawful discriminatory and retaliatory practice complained of. On behalf of Mr. Brown, we respectfully request that the U.S. Equal Employment Opportunity Commission does not simply join the Ohio Civil Rights

*EXHIBIT A - PAGE 1 OF 2*

Page **2** of **2**

Commission's finding in this matter but rather investigates and reaches their own agency determination.

Thank you for your consideration of this request. If you have any questions or require additional information in connection with this request, please do not hesitate to contact the undersigned.

Respectfully submitted,

Samantha E. Hudler

*Exhibit A - Page 2 of 2*

# OHIO CIVIL RIGHTS COMMISSION

**Board of Commissioners:**
Valerie A. Lemmie – Chair
Lori Barreras
William W. Patmon, III
Vernon Sykes
Charlie Winburn



Angela Phelps-White,
Executive Director

| | | |
|---|---|---|
| **Charging Party,** | ) | |
| | ) | |
| Michael Brown | ) | |
| | ) | |
| **v.** | ) | **Charge No.** TOLB2(008042)07052024 |
| | ) | 22A-2024-04227 |
| **Respondent,** | ) | |
| | ) | |
| Hitachi Astemo Americas, Inc. | ) | |
| | ) | |

## NOTICE OF RIGHT TO SUE

Pursuant to Ohio Revised Code 4112.051, you may file a civil action against the Respondent(s) alleging a violation of Ohio Revised Code 4112. The lawsuit may be filed in any State of Ohio court that has jurisdiction over the matter. Ohio Revised Code 4112.052 and 4112.14 provides that such a civil action must be filed within two years after the date of the alleged discriminatory practice. The time period to file a civil action is tolled during the pendency of the Commission investigation. You are advised to consult with an attorney to determine with accuracy the date by which a civil action must be filed. FOR FEDERAL COURT FILINGS: Notices of Right to Sue under federal law will be issued by the EEOC.

**FOR THE COMMISSION**

*Stacy A. Latta*

Stacy A. Latta
Toledo Regional Director


Date mailed: May 1, 2025

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Indianapolis District Office**
115 W. Washington St., South Tower Suite 600
Indianapolis, IN 46204
(463) 999-1240
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/11/2025

**To:** Michael Brown
103 South Adams Street
Fostoria, OH 44830

Charge No: 22A-2024-04227

EEOC Representative:        Jeremy Sells
State, Local & Tribal Coordinator
(463) 999-1161

### DETERMINATION OF CHARGE

The EEOC issues the determination that substantial weight has been accorded to the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:  Richard Burgamy  06/11/2025
Richard Burgamy
Acting Acting District Director

Please retain this notice for your records.

cc:  On following page

**NOTICE OF PRO SE FILING FOR THIS COURT CASE**

Michael L. Brown vs Hitachi Astemo Americas, Inc.
Ohio Civil Rights Commission Case Number – TOLB2 (008042)07052024/22A-2024-04227
EEOC Charge Number - 22A-2024-04227

United States District Court for the Northwestern District of Ohio – Western Division,

Please be advised that the plaintiff in this case (Michael Lee Brown of 103 South Adams Street, Fostoria, Ohio, 44830 – residing in Hancock County Ohio) is filing this case PRO SE in the aforementioned court, in order to keep his claims against his employer alive, following the recent withdrawal of representation by his previously retained attorneys.

Mr. Brown is currently seeking appropriate counsel licensed to practice law in the State of Ohio and in U.S. Federal Court, to represent him in this matter, and will inform the clerk with all appropriate and required details, if and when said counsel is successfully retained for this matter.

If appropriate counsel is not retained by Mr. Brown in the timely manner required by the court, Mr. Brown will proceed forward in litigating the case pro se.

With sincerest regards,

Michael L. Brown